

ENTERED
03/03/2011

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| MORITZ WALK, L.P., | ) | CASE NO. 10-41069-H3-11 |
| | ) | |
| Debtor, | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a hearing on "Green Bank, N.A.'s Motion for Relief from Stay" (Docket No. 18). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered granting the motion in part, and denying the motion in part. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Moritz Walk, L.P. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 6, 2010.

Rallin Welch, the president of Debtor's general partner, testified that Debtor owns four townhomes, and 3.823 acres of adjacent unimproved real property. He testified that Debtor's original intent when it acquired the property in 2007 was to build and market 41 townhomes and patio homes.

On July 11, 2007, Debtor executed a note payable to Redstone Bank, N.A. ("Redstone"), in the original principal amount of $3,150,000, secured by the real property. (Green Bank Exhibit 1). Redstone released its lien as to four lots, on which townhomes were built. (Green Bank Exhibit 3). Welch testified that the four lots released by Redstone are encumbered by the liens of other lenders. Glen Bell, an executive vice president with Green Bank, N.A. ("Green Bank"), testified that Green Bank is the successor in interest to Redstone.

Welch testified that the four townhomes are rented, and presently are Debtor's sole source of income. He testified that the rents are the cash collateral of the other lenders.

Bell testified that, as of December 6, 2010, Debtor owed Green Bank $2,318,564.41. He testified that Green Bank's security interest in Debtor's real property is subordinate to a tax lien, in the approximate amount of $164,000.[1]

Debtor's Schedule A indicates a value for the 3.823 acres of $2,860,000. (Docket No. 14). Bell testified that Green Bank had the property appraised in October, 2010. He testified that the appraisal listed a value of $2.86 million. He testified that Green Bank has not had the property appraised since October,

---

[1] Welch testified that Debtor borrowed funds to pay the tax debt, at an interest rate of 13.9 percent. He testified that the interest rate on this borrowing was less than the Debtor's potential cost of obtaining investment capital.

2010.  The October, 2010 appraisal is not in evidence.

Bell testified that Green Bank has received an indication of interest from a potential purchaser.  He testified that the potential purchaser, David Weekley Homes ("Weekley"), offered (presuming that Green Bank would be permitted to foreclose on Debtor's interest in the property) approximately $50,000 less than what was owed on Debtor's note to Green Bank.

Welch testified that Green Bank had introduced Weekley to Debtor approximately 18 months prepetition.  He testified that Debtor and Weekley have been in discussions since that time.  He testified that Weekley had verbally offered to purchase the property from Debtor for what was owed on Debtor's note to Green Bank.

Welch testified that Debtor has attempted to sell the property as a whole since October, 2010.  He testified that Debtor has listed the property with a sale price of $3,395,000.  He testified that Debtor prefers to develop the 41 townhomes and patio homes called for under Debtor's original development plan.  He testified that Debtor's Chapter 11 plan will call for additional capital investment to fund further development of the property.  He testified that investors have been unwilling to invest in light of the pending attempts by Green Bank to foreclose.

Welch testified that Debtor owes approximately $100,000 in unsecured debt, much of which is owed to subcontractors. He testified that there are two or three liens, totaling approximately $30,000, filed by contractors on the property.

Welch testified that Debtor's prepetition monthly payment of interest to Green Bank was approximately $11,000 per month.

Debtor's offer of adequate protection consists solely of what Debtor alleges is an equity cushion with respect to Green Bank's lien.

## Conclusions of Law

Section 362(d) of the Bankruptcy Code provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
>    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
>    (2) with respect to a stay of an act against property under subsection (a) of this section, if–

>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization;

11 U.S.C. §§ 362(d)(1), 362(d)(2).

> Section 362(g) of the Bankruptcy Code provides:
>
> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--
>
>> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>>
>> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

> Section 361 of the Bankruptcy Code provides:
>
> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by--
>
>> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>>
>> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>>
>> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an

>administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

In the instant case, the value of the property subject to Green Bank's lien is within the range between the debt Bell testified is owed to Green Bank on the petition date, $2,318,564.41, and the value Bell testified was derived in Green Bank's appraisal, $2,860,000. It appears likely, based on the apparent offer of Weekley to purchase the property for an amount equal to the amount owed to Green Bank, that Debtor has some equity in the property.

When a creditor is adequately protected by an equity cushion and the debtor could suffer a substantial loss in the event of foreclosure, relief from stay does not automatically follow a default in payment. In re Mendoza, 111 F.3d 1264 (5th Cir. 1997).

Debtor's equity in the property is eroding, due to the continuing accrual of interest, both on Debtor's tax lien debt, and on the debt Debtor owes to Green Bank. The court has determined that adequate protection of Green Bank's interest in the property requires that the Debtor act promptly to propose a confirmable plan, and to obtain confirmation of the plan.

Based on the foregoing, the court will enter an order conditioning the automatic stay on Debtor's filing of a plan and

6

a disclosure statement on or before April 15, 2011, and obtaining confirmation of a plan on or before July 11, 2011.

Signed at Houston, Texas on March 3, 2011.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE